On the Merits.
 We do not agree with the Court of Appeal as to the nature or purpose of the stipulation' for damages. The provision reads:
“I (or we) empower any attorney to confess a judgment against me (or us) in a sum equal to forty per cent, of the total rent covenanted to be paid, with costs of suit, and attorney’s fees of ten per cent, as your liquidated damages, in case I (or we) should wrongfully refuse to accept delivery of said counter; such power being in all -things coextensive with the power hereinbefore granted.”
It is apparent that the penalty was not to be recovered in addition to the purchase price, but only in event defendant refused to accept delivery; and once it was demanded and paid, plaintiff would have no further rights under the contract It represents the sum which the parties agreed should be the measure of the damages for the breach in the manner named. They had a right to make such stipulation under express provision of the Revised Civil Code, art. 1934, par. 5. The 40 per cent, sued for herein was no doubt intended to cover the expenses of plaintiff’s agent in obtaining the contract and the profit which it would have made had the agreement been carried out. In no event was it interest. Once the counter had been delivered and accepted and the price had become collectable, the contingency which made the present claim for damages possible would have passed out and been extinguished.
On the question of whose fault it was that the agreement was not carrie'd.out, we find that both parties were slow in taking action in the matter. The order was dated April 1, 1920, and acknowledged by postal card about April 10th; and, on April 27th, defendant wrote plaintiff as follows:
“Your letter to hand regarding the shipment of our counter. I am not in shape as yet, to see my way clear to purchase such a counter, and I ask that you cancel the order right away.
“But I may think it over and take one of your smaller ones. Please send me your catalogue prices on yoiir small counters, so I may get my counter as soon as shipment is possible.
“Thanking you sincerely for this favor.”
This letter was not acknowledged until May 13th, on which date plaintiff replied that although it was not customary to allow cancellation of orders, in this particular instance, if defendant would send it an order for a smaller counter, it would ship same instead of the one first ordered. Catalogue and price lists were sent, with the request the ^defendant reply promptly in order that a new contract might be forwarded for his signature.. Having received no response froln this letter, plaintiff again wrote on May 24th, in part, as follows:
“We have not heard from you in reply to that letter (May 13th) and if we do not hear from you by return mail we will deliver the counter and will expect you to accept it in accordance with the terms of the contract which you signed.”
Again on June 8th, plaintiff wrote defendant that it had had no answer to its former letters, and that “we are placing the matter in the hands of our attorney” ; that it seemed defendant was “endeavoring to get out from under your contract,” and such action could *311 not be permitted; and it further suggested that in order to avoid trouble, defendant “do something definite pretty quick.” This last communication, although dated June 8th, provoked the following response on June 11th, from defendant:
“We are -fo-day in receipt of your two letters, the first we have heard from you since I ordered my counter. I wrote you in regards to the delay, and wishing to have it changed to a short counter. But got no reply. Now 1 have purchased me a counter here, and as for trying to jump my contract, you can cancel my order, and refund me my $12.00. As you did not stand up to your contract as signed by your agent, and I guarantee you that my attorney is as good as yours.”
This last letter of defendant was not true in at least three important particulars: First, it was not the first he had heard from plaintiff since ordering the counter, as is evidenced by his letter of April 27th, quoted above, wherein he acknowledges receipt of one from plaintiff after giving the order, and asked permission to order a smaller counter; second, he had made no complaint about delay in said letter-of April 27th; and, third, the assertion that he had purchased another counter was admitted by him as a witness not to be true. It is true that plaintiff’s first two letters were addressed to defendant at 1025 Camp street, his former place of business, and the last to 1422 Pauline street; but he got at least three from plaintiff, for he acknowledged one April 27th, and two on June 11th, and plaintiff never claimed to have written but four times, including the postal card acknowledging the order.
' Plaintiff’s secretary in depositions taken by commission testifies, that plaintiff had a number of counters of the design first ordered by defendant in a warehouse in the city of New Orleans, one of which could have been delivered within an hour’s time. Defendant says that he coniplained to the agent of plaintiff of the failure to deliver upon the occasion of his attempt to collect an installment of the rent a short while after the contract was signed; but this, too, fails to jibe with the documentary evidence. The first installment, as shown by the contract and note signed by defendant, did not become due or collectable until June 1, 1920, and defendant’s letter, saying he was “not in shape as yet to see my way clear to purchase such a counter,” was written on April 27th, a month and three days before anything else was due; and he made no complaint about delay therein, but requested that he be sent a catalogue and allowed to select a smaller counter. There is no explanation of why defendant did not get, if he in fact did not receive it, the one remaining letter or post card which he is not shown to have actually acknowledged over his own signature; and we are very much impressed with the belief that he did receive them all, and within a reasonable time after they were written.
Considering all the facts and circumstances, we are convinced that the real reason for the.failure to deliver and of the defendant to accept the counter in compliance with the tender contained in plaintiff’s letter of June 24th, after defendant failed to make another selection, was that the latter changed his mind and determined not to accept the counter or to perform any of the other stipulations of the agreement; hence he is liable for the stipulated damages.
For the reasons assigned, the judgment of the Court of Appeal is annullod and set aside, and the decree of the district court is reinstated and made the judgment of this court; defendant pay all costs.
O’NIELL, O. J., and OVERTON, J„ dis-, sent.